Good morning, ladies and gentlemen. Our first case for this morning is Sebranek against Kijakazi, appeal number 203399. And we're ready for you, Mr. Duncan. Good morning. May it please the court, Dana Duncan on behalf of the appellant, Dana Sebranek. Minimally, Ms. Sebranek's 50th, on her 50th birthday, January 16, 2018, she would have qualified for benefits if she were limited to unskilled sedentary work, and that's pursuant to the medical vocational guidelines. At that time, two state agency physicians found that she was limited to sedentary work. And four separate opinions, two by state agency consultants and two by consultative examiners found that Ms. Sebranek had at least moderate mental limitations in several functions, which would have minimally resulted in her being found at the unskilled work level. She had passed work as an administrative assistant, which is an SVP7, which is skilled, and as a real estate agent, SVP8, the highest level of skill. Given that the six opinions were there from the state agency, doctors hired by Social Security, and finding that she would have been limited to sedentary unskilled work, this case should have been relatively easy to decide favorably for the claimant. However, despite these opinions, the ALJ rejected all six, choosing instead to take medical evidence that she claimed was filed during the hearing period and interpret that evidence by her own lathe opinion as being either a mental or physical improvement in Ms. Sebranek's condition. Well, your primary complaint, as I understand it, is that the ALJ's residual functional capacity indicated light work, not all the way down at the sedentary level, because that difference had an effect, especially after she turned 50. But the ALJ is looking at the content of all of these opinions. It's just the bottom line that the ALJ felt was inconsistent with the guidelines. Correct, Your Honor, and I'll jump to the latter part of my argument to address your question. Okay, we have in this particular case no support for the ALJ's assessment. When she looked at the sedentary restrictions, she indicated that the evidence was unclear and she said based upon evidence contained in Exhibits 1F and 2F, both of those exhibits were reviewed by the state agency physicians. And then she proceeds to go to 5F, which the only relevant document or piece of evidence in there is an MRI which shows that she has orthopathy worse at L4-5 and L5-S1 levels by the MRI and that she ends up with lumbar spine injections. The judge or the ALJ in this particular case never addressed anything specific, just cites these evidence or cites this evidence as some sort of support. But let's look at page 9 of the ALJ's opinion. The ALJ does say the evidence of record simply does not support her allegations of disabling limitations, sparse sporadic routine conservative treatment, and not consistent with the degree of limitation that she's alleging. So the point being, not so much as you well know, I know, does she have various physical problems, but what do they translate into in terms of her ability to work? And the ALJ looks at all of this and says that she does have the capacity to perform at least a reduced range of light work. The problem is that the judge or the ALJ in this particular case is making her assessment contrary to the medical opinions of two licensed doctors under the state agency and is doing it without any evaluation of the evidence or anything that would show that she had some level of support for her opinion. So is it your position then that really as a matter of law there has to be at least one physician who testifies to the degree of limitation that the ALJ finds? Let's put it this way, Your Honor. The new regulations are supposed to have been a reinterpretation or at least a strengthening of what the existing law has been. And in those regulations, one factor that is supposed to be evaluated is the consistency of the medical opinions. When you have both doctors opining the same thing and the judge cites evidence that they would have reviewed as being contrary to their opinion, I think that the ALJ was at least obligated to point specifically to the evidence that she felt was contradictory. She didn't mention the MRI at all and any of the subsequent back injections she had. She just decided that this was going to be light and did so without expressing anything specific as to why these doctors were wrong. And she should have at least considered the fact that both doctors had indicated the same finding at light. Did Ms. Sobranek's treating physicians offer any medical opinions to the ALJ? No, Your Honor. I did not handle this file at the administrative level, but just for the court's awareness, it is getting increasingly difficult in the days of having numbers that doctors have to comply with in order to meet requirements for billing for them to take the time to fill out anything at all, not to mention the fact that legal departments in the various facilities are advising doctors not to complete the report. So I would say maybe 40% of the cases will the doctor cooperate. So it's not unusual that it you're left with the state agency opinions. In this case, it's just overwhelming as far as the number that the judge just disregards and makes her own decision as far as what exactly that evidence meant without even analyzing the evidence to support it. And those consultants, those agency consultants did not examine your client, right? Two of them or four of them did not. The two consultative examiners did actually conduct an evaluation of her in person. That would have been several objective factors, including a mental status examination and a medical history that would have been taken and subject to her evaluation and consideration. Anyway, as I've indicated, the biggest problem is ultimately that the ALJ did not actually address the specific evidence and what evidence she did cite did not support her conclusions. The judges can obviously take and make their own opinions based upon the medical records, but it has to be based on a good reason. And what's tended to be deemed a good reason is that there has to be some basis in the medical evidence. When she doesn't even specify what evidence she considered as a basis, that can't be a good reason. There's a reason why SSR 96-8P specifically notes that when assessing a medical source, the ALJ must explain why the opinion was not adopted. And that requirement is outlined, and there's very little case law in here, but I can point to Taveneau versus Colvin, which is Judge Edelman's decision out of the Eastern District at 927-557. That requires some level of articulation and outlining the evidence that was considered in support of rejecting that opinion. That simply was not done in this case. And while I understand that the ALJ has certain latitude, this is beyond what's normal for what should be considered appropriate latitude when she disagrees with every opinion and then makes her own interpretations without any medical basis. I'll reserve that little time that's left for rebuttal. All right. Thank you very much, Mr. Duncan. Mr. Gregory. If you may please the court, my name is Michael Gregory, and I'm here on behalf of the Commissioner of Social Security. The claimant merely asked the court to reweigh the selective evidence that she's presented in her favor, but pointing out conflicting evidence is insufficient and asking the court to reweigh evidence is inappropriate because that is not the reviewing court's role. Isn't it a little unusual though for all of the medical testimony in a record to point, for example, to a sedentary level of ability and for the ALJ to dig beneath that and create her own medical assessment? Well, Your Honor, it's difficult to say what's usual or unusual. These cases can vary so much in terms of how many opinions are on the record. I know counsel has suggested that generally speaking, it has become more difficult for doctors to provide opinions. But this case is just looking at the record that we have in front of us. And this case, you know, there was no evidence that there was any difficulty obtaining on a medical opinion. There is no additional medical opinion on the record. And what's left is just the two state agency opinions that were issued at the initial and reconsideration stage. So, you know, it could be considered unusual. But again, because there are so many factors in these cases, it's hard to say what is usual or unusual in any given case. So I want you to look at the paragraph that's, it's the first full paragraph on page 10 of 14, which seems to be, there are all kinds of numbers on these pages, but it's in the appendix where the ALJ is talking, explaining why she gives little weight to the opinions of the evidence. You know, she's, her activities of daily living, her sensitivity when she's being examined, the negative straight leg raises, the fact that she worked 30 hours a week doing certain things, you know, that paragraph. Is that enough or is that really the ALJ taking over the job of the doctor? Your Honor, that's certainly enough for the ALJ to find that the record was inconsistent with the state agency's medical opinions. You know, as you pointed out, the ALJ listed, you know, a host of good reasons here, you know, primarily the fact that she continued part-time work as a realtor, which was a skilled-like position for a number of years after alleging disability. But what was the evidence she could do it 40 hours a week? I mean, she does it part-time, but that's not the same thing as what you need for, you know, for a finding of ability to work. That's correct, Your Honor. That's correct, Your Honor. And the ALJ doesn't look to this fact of part-time work and equate that to the ability to necessarily work full-time. I believe the ALJ says this, make several notes throughout the opinion when discussing the part-time work. That is, you know, a single factor that they consider, and the ALJ here found it probative. You know, instead of equating it to the ability to do, you know, an equivalent of 40 hours per week, what the ALJ does is look at all the record evidence, in this case, sustained part-time work, and compares that to the medical opinions. And here, where the medical opinions suggested that she could do nothing more than sedentary or unskilled work, the fact that she was engaging in activity that demonstrated skilled work and light-level work was at least inconsistent with those bottom-line conclusions. But is the ALJ looking at this in its entirety? I mean, there's this paint-the-ceiling event, but she says she's in terrible pain after that, so that really can't be thought of as a successful operation. And to that point, Your Honor, while I understand the claimant did testify that she had a lot of pain afterwards and she said that she actually saw it, it caused her to see a chiropractor multiple times a week for multiple months, but the record simply does not support that. You know, she did not go to the chiropractor any more frequently in the month or two after that event in June 2017. A month afterwards, the chiropractor noted that she was walking very comfortably despite reporting pain at 10 out of 10. The record simply does not support what she had said there, Your Honor. Okay, thank you. So, continuing with the issue of the work activity, Your Honor, you know, one important thing to note is that the claimant has argued that the state agency opinions took into consideration the fact that she engaged in part-time work, but this is only partially true. So, while they were aware that she returned to work in July 2014 as a realtor, she also reported to the agency in January 2016 that she had stopped that work. The state agency opinions came out in the summers of 2015 and 2016. You know, it wasn't until the March 2018 administrative hearing that she testified that she returned to work as a realtor once again in January 2017, where she continued to work until throughout the time of the hearing. So, in fact, well over a year. So, this is evidence that the state agency consultant simply could not have considered in their opinion. So, in addition to the work activity, the LJ also found that the claimant's self-reported abilities and the activities of daily living throughout the record supported greater functional ability than the opinions found. You know, regarding the mental or non-insertional limitations, the LJ relied on the claimant's own denial that she needed any reminders. In the same report, she said that she paid attention well, followed instructions well, could handle changes in routine well, and she also relied on the claimant's reported activities, which all required some level of concentration or pace, including her work on computers for hours at a time, preparing large meals, and driving out of state. Now, regarding the physical limitations, the LJ relied on the claimant's own report that she could stand for seven hours in a day, which is well beyond the general rule that sedentary work requires a maximum of only two hours a day. Similarly, she pointed to the claimant's own statement to her doctor that she could lift 20 pounds. That's double the maximum 10-pound requirement for sedentary work, and as you mentioned, Your Honor, the LJ cited strenuous activities of daily living, including driving, mowing, painting, and manual work. Once again, the LJ considered evidence that came in after the state agency opinions were issued to where they could not have considered that. You know, for instance, the claimant drove out of state to Iowa to visit friends in July 2017. Again, this happened the same time the claimant drove to Illinois to visit friends twice in October 17. You know, her physical therapist noted in November 2017 that she remained primarily independent with activities of daily living and just avoided a lot of lifting. So ultimately, as the LJ explained, these voluntary activities that the claimant engaged in were inconsistent with the severe limitations of the opinions, and that was a good reason for discounting the medical opinions. So to what extent is the commissioner relying on, I mean, sometimes you see in these cases, you know, let's say an allocation of responsibility that it's for the ALJ to decide what this package of disabilities, whatever they may be, adds up to in terms of ability to work. It's not for the doctors to make that ultimate decision. That's correct, Your Honor. So the regulations explain that the residual functional capacity is an administrative finding, and that is reserved to the commissioner of Social Security. Seventh Circuit's explained a number of times that the ALJ, while they must consider and evaluate all the medical opinions in accordance with the regulations, which the ALJ did here, they are not bound by any medical opinion in particular, including state agency opinions. So while the ALJ is obligated to take this under advisement, so long as they explain their rationale, which the ALJ did here, and support the residual functional capacity with substantial evidence, that's all that's required of the ALJ in that respect. So, briefly, the ALJ, throughout the decision, looked at the normal physical and mental examinations. Importantly, regarding the mental examinations, at the first psychological consultative examination, Dr. Goldstein summarized the testing to show remote memory, immediate recall, and fund of knowledge were all within normal limits. At the second exam, Dr. Benish called it essentially normal and found that on testing, the claimant exhibited mental persistence, pace, and immediate memory all in the average range. These are all significant objective evidence that supported the ALJ's finding that the record as a whole was inconsistent with the opinions. And that is my time, Your Honor. All right. Thank you very much. I'll give you a full minute, Mr. Duncan. Thank you, Your Honors. Just a couple points. First off, we're not asking the court to reweigh the evidence. We're asking the court to hold the ALJ's feet to the fire and articulate sufficient grounds for her findings and conclusions. And as I cited, she provided open-ended citations to the record, several of which were already reviewed by the state agency doctors. She never cited specific evidence favorable to the claimant as a basis for consideration. She then goes on and mentions daily activities. But as I can point out, the travel, the judge or the ALJ had a duty to make inquiry about the travel. She had to stop every 20 or 30 minutes. Angstrand, the decision of this court, and SSR 16-3B indicate that you cannot use daily activities adversely unless you make inquiry and ask for an explanation. And despite having an opportunity to have the current job evaluated by the vocational expert, the ALJ chose not to. Okay. Thank you very much then. Thank you. The court thanks both counsel and we will take this case under advisement.